**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | |
|---|---|
| Greenleaf 401K Trust, by Dr. Nasrullah Khan as Trustee, | )<br>)<br>) |
| Plaintiff, | ) |
| v. | ) No. 22-CV-6658 |
| | ) |
| Seneca Insurance Company, Inc. | )<br>) |
| Defendant. | ) |

## COMPLAINT

NOW COMES Plaintiff, Dr. Nasrullah Khan, not individually but as Trustee for the Greenleaf 401K Trust, by his attorney Pollack Law Firm, and files this Complaint, stating in support:

### Introduction

1. Plaintiff trust seeks to recover denied insurance policy benefits following the total loss of its insured building by collapse caused by weight of people and property and by civil commotion.

### Parties, Jurisdiction and Venue

2. At all times relevant, Greenleaf 401K Trust was and is a qualified individual retirement plan, adopted by SNK-Farms, LLC established under the laws of Illinois as a limited liability company with its principal place of business in the City of Chicago, County of Cook, State of Illinois, with all plan trustees and all SNK-Farms, LLC managers being citizens of Illinois.

3. At all times relevant, defendant Seneca Insurance Company, Inc. ("Seneca") was and is an insurance company organized and existing under the laws of the State of New York, with its principal place of business at 199 Water St., City of New York, County of New York, State of New York, and authorized by the Director of the Department of Insurance of the State of Illinois to issue commercial protection insurance policies in the State of Illinois.

4. Jurisdiction is appropriate pursuant to 28 U.S.C. § 1332 because the amount in controversy

exceeds $75,000 and because Plaintiff, its plan administrators, and its LLC managers, are all citizens of Illinois, and defendant is a citizen of New York, being incorporated, domiciled in, and having its principal place of business in New York.

5. Venue is appropriate pursuant to 28 U.S.C. § 1391(b)(2), being the judicial district of the location of the issuance of the insurance policy and loss that is the subject of this action.

**Factual Allegations**

6. On February 27, 2021, Defendant Seneca, in consideration for the premiums duly paid by Plaintiff, renewed its commercial protection policy of insurance bearing policy number CMP 4704470 with an effective period of February 27, 2021 to February 27, 2022. See Exhibit 1, and amendments thereto in Exhibits 2 and 3.

7. Pursuant to the terms of said policy, Plaintiff was named as the insured, and its real commercial property at 6948 N. Western Ave. Chicago, IL 60645 was insured thereunder.

8. On or about June 17, 2020, at Seneca's direction, an inspection of the insured property was performed and certain recommendations were made to keep the policy from being cancelled, but no findings or recommendations related to impairment of its structural integrity.

9. On or about February 11, 2021, Plaintiff entered into a commercial lease to rent the insured property to tenant Grace Fajardo for use as a social club through February 11, 2022.

10. On or about February 8, 2022, an incident occurred in which City of Chicago and federal law enforcement executed a search warrant on the insured property.

11. On February 8, 2022 The Chicago Department of Buildings inspected the building and made the following findings in its report:

> Main center beam deflecting downward due to nonstructural supports with separation split running approximately 7 feet on undermined footing Southeast corner of basement area has multiple floor joist pocketed into masonry that are resting on nonstructural wall Northwest corner of basement has temporary nonstructural shoring These conditions are

dangerous and hazardous to first responders. Multiple partitions building for living quarters on first floor and basement building without plans and permit with no second means of egress for living quarters in basement

Exhibit 4.

12. The "nonstructural supports...on undermined footing...floor joists pocketed into masonry that are resting on nonstructural wall...temporary nonstructural shoring" and "living quarters" noted in the building inspector's report were caused by tenant modifying the building.

13. Tenant's building modification included significant weight and volume of building materials which would require multiple people to execute.

14. Tenant's structural modifications were in disregard of the lease provision that "Lessee shall comply with all statutes, ordinances and requirements of all municipal, state and federal authorities now in force, or which hereafter be in force, pertaining to the premises, occasioned by or affecting the use thereof by Lessee."

15. Tenant's building modifications compromised the building's structural integrity and made its collapse imminent when the weight of tenant's property and guests were added.

16. The weight of tenant's property and guests on the structurally endangered building caused the building to collapse by way of significant impairment to its structural integrity.

17. Tenant's building modifications allowed it and its guests to assemble and commit unlawful acts including operating a meth lab, allowing gambling and committing acts of violence, which activities were the subject of complaints by neighbors to the local Chicago alderman.

18. On February 9, 2022 the City of Chicago sought and obtained from the Commissioner of the Department of Buildings for the City of Chicago an administrative order for an emergency permit for the immediate demolition of the insured property based on the following:

   a. "WHEREAS, on or about February 8th, 2022 the Department of Buildings inspected the

above reference property in response to an immediate response call for a building collapse. The building failure resulted constituted an immediate danger to the public a Emergency Permit must be applied within 72 hours."

b. "THEREFORE, based upon a review of the inspection report and other information, the Commissioner finds that the building at the location above referenced"

   i. "Building was damaged during construction;"

   ii. "Building collapsed due to being structurally unsound;"

   iii. "Constitutes an actual and imminent danger to the public."

Exhibit 4.

19. On February 9, 2022 the city caused the insured building to be demolished under the order.

20. Plaintiff notified Seneca on February 9, 2022 the insured building was ordered demolished.

21. The demolition cost was $42,910 and Plaintiff as the property owner is required to reimburse the City of Chicago for that amount under Chicago ordinance.

22. The actual cash value of the building when it collapsed exceeded the $200,000 policy limit.

23. The insuring policy contains the following provisions:

**BUILDING AND PERSONAL PROPERTY COVERAGE FORM**

**A. Coverage**

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

   **1. Covered Property**

     Covered Property, as used in this Coverage Part, means the type of property described in this section, A.1., and limited in A.2. Property Not Covered, if a Limit Of Insurance is shown in the Declarations for that type of property.

     **a. Building**, meaning the building or structure described in the Declarations, including:

        **(1)** Completed additions;

        **(5)** If not covered by other insurance:

           **(a)** …alterations and repairs to the building or structure;

   **3. Covered Causes of Loss**

    See applicable Causes of Loss form as shown in the Declarations.

### 4. Additional Coverages
  **a. Debris Removal**
  **(1)** Subject to Paragraphs **(2)**, **(3)**, and **(4)**, we will pay your expense to remove debris of Covered Property and other debris that is on the described premises, when such debris is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date of direct physical loss or damage.

  **(4)** We will pay up to an additional $25,000 for debris removal expense, for each location, in any one occurrence of physical loss or damage to Covered Property, if one or both of the following circumstances apply:

  **(a)** The total of the actual debris removal expense plus the amount we pay for direct physical loss or damage exceeds the Limit of Insurance on the Covered Property that has sustained loss or damage.

  **(b)** The actual debris removal expense exceeds 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage.

### 7. Valuation
We will determine the value of Covered Property in the event of loss or damage as follows:
  **a**. At actual cash value as of the time of loss or damage, except as provided in b., c., d. and e. below.

### G. Optional Coverages
If shown as applicable in the Declarations, the following Optional Coverages apply separately to each item:
  **1. Agreed Value**
  **a.** The Additional Condition, Coinsurance, does not apply to Covered Property to which this Optional Coverage applies. We will pay no more for loss of or damage to that property than the proportion that the Limit of Insurance under this Coverage Part for the property bears to the to the Agreed Value shown for it in the Declarations.
  **2. Inflation Guard**
  **a**. The Limit of Insurance for property to which this Optional Coverage applies will automatically increase by the annual percentage shown in the Declarations.

Form CP 00 10 10 12
### COMMERCIAL PROPERTY CONDITIONS
**B. CONTROL OF PROPERTY**
  Any act or neglect of any person other than you beyond your direction and control will not affect this insurance.

Form CP 00 90 07 88
### CAUSES OF LOSS – SPECIAL FORM
**A. Covered Causes of Loss**

When Special is shown in the Declarations, Covered Causes of Loss means direct physical loss unless the loss is excluded in this policy.
- **B. Exclusions**
  - **2.** We will not pay for loss or damage caused by or resulting from any of the following:
    - **k.** Collapse, including any of the following conditions of property or any part of the property:
      - **(1)** An abrupt falling down or caving in;
      - **(2)** Loss of structural integrity, including separation of parts of the property or property in danger of falling down or caving in; or
      - **(3)** Any cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion as such condition relates to **(1)** or **(2)** above.

      But if collapse results in a Covered Cause of Loss at the described premises, we will pay for the loss or damage caused by that Covered Cause of Loss.

      This exclusion **k**. does not apply:
      (a) To the extent that coverage is provided under the Additional Coverage, Collapse; or
      (b) To collapse caused by one or more of the following:
      (i) The "specified causes of loss";...or
      (iv) Weight of people or personal property
- **G. Definitions**
  - 2. "Specified causes of loss" means the following: …civil commotion; …

Form CP 10 30 09 17

## COMMERCIAL GENERAL LIABILITY COVERAGE FORM

### SECTION 1 - COVERAGES

### COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**
  a. We will pay those sums that the insured becomes legally obligated to pay as damages because of …"property damage" to which this insurance applies.

**2. Exclusions**

This insurance does not apply to:

**b. Contractual Liability**

…"property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:
**(1)** That the insured would have in the absence of the contract or agreement; or
**(2)** Assumed in a contract or agreement that is an "insured contract"…

### SECTION V – DEFINITIONS
  **9.** "Insured contract" means:
    **d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality.

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**17.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it;

Form CG 00 01 04 13

## PROPERTY PLUS ENHANCEMENT ENDORSEMENT

**C. CONDITIONS**

### PROPERTY PLUS ENHANCEMENT ENDORSEMENT SCHEDULE

| Coverage | Limit of Insurance |
|---|---|
| Building Ordinance or Law | $100,000 |
| Business Income and Extra Expense | $25,000 |
| Consequential Loss | $10,000 |
| Debris Removal | $20,000 |
| Inflation Guard | 2% |

**D. Additional Coverages**

**a. Debris Removal** – We will pay up to an additional $20,000 for each location in any one occurrence if the debris removal expenses exceed the 25% limitation.

**x. Business Income and Extra Expense**

You may extend the insurance provided by this coverage form for direct loss of or damage to Covered Property to apply to:

(1) The actual loss of Business Income you sustain due to the necessary suspension of your operations at the described premises as a result of covered direct loss or damage; and

(2) Necessary Extra Expense you incur that you would not have incurred if there had been no such covered direct loss or damage.

**aa. Inflation Guard**

The Limit of Insurance for Building Property Coverage will automatically increase by 2%.

**ac. Building Ordinance or Law**

a. If there is an ordinance or law in effect at the time of loss that regulates …land use…of a covered building and if enforcement of that ordinance or law affects he repair or rebuilding of that building following damage by a Covered Cause of Loss, you may extend the insurance on Building to cover:

(1) Costs to demolish and clear the site of the undamaged portions of the building;

(2) The value of the undamaged portions of the building; and

(3) The increased cost to repair or rebuild the building with another building of the same size.

c. If you do not repair or replace the damaged building, we will pay under this Extension only to demolish and clear the site of the undamaged portions of the building.

Form 17-250 05 10

## COUNT I
*[Breach of Contract]*

24. Plaintiff repeats and realleges the allegations contained in paragraphs "1" through "23" above as if more fully set forth herein.

25. The policy of insurance between Seneca and Plaintiff was in effect on the date of loss.

26. The insured building collapsed during the policy period by the weight of people and tenant's property due to being structurally unsound from the tenant's building modification.

27. The tenant's modification of the building and the building's collapse were caused by activities that constitute a civil commotion.

28. Plaintiff performed and satisfied all conditions precedent to coverage under the policy.

29. The exclusion "**k.** Collapse" does not limit coverage because two of its exceptions apply:

    a. collapse caused by "specified cause of loss" i.e. civil commotion; or

    b. collapse caused by weight of people or property on the modified building.

30. Seneca breached the terms of the policy by refusing to pay Plaintiff's claim as follows:

    a. Failing to pay the $42,910 in demolition:

        i. as an "insured contract" i.e. ordinance, under Property Damage Liability coverage;

        ii. under Building Ordinance or Law coverage; or

        iii. under the main Building Coverage; and

    b. Failing to pay the actual cash value up to the policy limits for direct physical loss.

31. Plaintiff suffered damages from Seneca denying coverage of actual cash value up to the $200,000 limit, plus inflation protection coverage, plus $42,910 in demolition.

32. Seneca misrepresented the policy terms and facts of loss to Plaintiff in its July 27, 2022 letter:

    a. "We first note that you assert that the cause of the loss for this claim was allegedly collapse, and not the City of Chicago's ("City") demolition of the building in question. From your letter, it appears that you are contending that the building in question had collapsed prior to

its demolition. While you reference the City's Administrative Order for your position, you may have overlooked the photographs which were taken by the City's inspector prior to the demolition of the building. Those photos show that the building was still standing prior to the demolition and that it had not collapsed in any manner." See Exhibit 5.

    b. The policy specifically includes as collapse: "**(2)** Loss of structural integrity, including ... property in danger of falling down or caving in..."

33. Seneca misrepresented the exception to exclusion "**k.** Collapse" for "**(b)(iv)** Weight of people or personal property" by stating in its July 27, 2022 letter to Plaintiff that "neither your letter, nor any of the documents you provided, reveal anything which would support the contention that the loss in question resulted from...an *excessive* amount of weight from people and personal property" (emph. added), but the exception did not state *excessive* weight. Exhibit 5.

34. The claim amounts were easily ascertainable on 2/9/2022.

**Wherefore,** Plaintiff requests this Court enter an order for judgment against Seneca as follows:

A. An award of damages of $242,910 plus the inflation protection in the policy;

B. An award of interest under 815 ILCS 205/1 et seq. of 5% from 2/9/2022; and

C. An award of reasonable attorney's fees and penalty under 215 ILCS 5/155.

## COUNT II
*[Declaratory Judgment]*

35. Plaintiff repeats and realleges the allegations contained in paragraphs "1" through "23" above as if more fully set forth herein.

36. Seneca denied coverage stating the loss was caused by the demolition. Plaintiff responded the building had already collapsed according to the City's Administrative Order, and Seneca responded: "you may have overlooked the photographs which were taken by the City's inspector prior to demolition of the building. Those photos show that the building was still standing prior to the demolition and that it had not collapsed in any manner."

37. An ambiguity exists in the policy what constitutes collapse.

38. Plaintiff played no role in drafting the policy terms.

39. Plaintiff expected coverage if the building insured under this policy suffered direct physical loss by substantial impairment to its structural integrity from civil commotion or weight of people or personal property, as those are exceptions to exclusion "**k.** Collapse".

40. An actual controversy has arisen between Plaintiff and Seneca if the direct physical loss was by collapse or the subsequent demolition.

41. To determine if the building collapsed prior to demolition, the policy ambiguity must be decided if a building is collapsed by substantial impairment to its structural integrity, or if it must completely fall to the ground with no remaining walls standing.

42. Plaintiff has no adequate remedy at law because coverage cannot be determined until the ambiguity is resolved if collapse requires the insured building to completely fall down.

**WHEREFORE**, Plaintiff requests this Court enter an order as follows:

A. Declaring an ambiguity exists in the policy coverage for "collapse" where the insured building suffers substantial impairment to its structural integrity but does not fall completely down; and

B. Resolving the ambiguity by declaring collapse means a substantial impairment to the building's structural integrity without having to completely fall down.

Respectfully submitted,
Greenleaf 401K Trust,
by Dr. Nasrallah Khan as its Trustee

By: /s/ Steven B. Pollack
    Plaintiff's Counsel

Steven B. Pollack, IL. Atty. No. 6290482
Pollack Law Firm
49 Sherwood Terrace, Suite 49-X
Lake Bluff, IL 60044
steve@ecoesq.com
847-436-9566 Tel. 888-491-9566 Fax